United States v. Marco Laboy Torres Mr. Ulrich Good morning, Your Honors. My name is Frederick Ulrich. I'm an assistant federal public defender in the Middle District of Pennsylvania. I represent the appellant, Marco Laboy Torres. Good morning. Good morning. I'd like to reserve three minutes of my time for rebuttal. Good. We have one single, discrete issue in this case. Maybe there are parts to it. One single, discrete issue. In our view, Mr. Laboy Torres' conviction in a local court in Mayaguez, Puerto Rico was not a sufficient predicate under 922 to disqualify him from possessing or purchasing a firearm. Our position is informed in primary part by the United States Supreme Court decision in small in which the court concluded that the convicted in any court language in Section 922 excludes foreign convictions and applies most appropriately to convictions in domestic courts. We believe the domestic court language should be construed as encompassing federal courts, state courts, a municipal court of a political subdivision, but not a local court in Mayaguez, Puerto Rico. We think this is consistent with how the Second Circuit treated a similar issue in a precursor statute, Section 1202, albeit with different language, but not consistent with the way the First Circuit has treated a similar issue. Not entirely, but in the Second Circuit case, the court concluded ultimately that a Puerto Rican conviction in a local court was not a predicate for disqualifying a person from possessing a firearm. Coincidentally, that statutory language was lifted out of Section 1202 and placed in 922 as part of the Firearms Owners Protection Act of 1986. There does not appear to have been any effort on the part of Congress to substantively change the scope of the statute. Indeed, in their House report they said, what we're doing here basically is clarifying a statute by combining two sections so we get all the offenses involving firearm possession, transport, and receipt in one place. Do you agree that we need to determine whether Puerto Rico would be considered domestic versus foreign? I believe so, but I believe at the heart of the issue is when you're dealing with Puerto Rico, as Congress has in the past in other places, they're pretty specific. If it's Puerto Rico, the Canal Zone, the District of Columbia, some other territory, they say, hey, if we're going to have interstate commerce, it includes Puerto Rico, and we're going to treat them like a state for this thing. But they didn't say anything about this. But routinely Puerto Rico is left out specifically, and we've had to decide how does a certain statute apply vis-à-vis Puerto Rico when it's not stated. What does the fact that the Supreme Court in small used as part of its reasoning vis-à-vis extraterritorial application for statutes where these statutes had been determined specifically to apply to Puerto Rico, isn't that pretty persuasive that Puerto Rico is not extraterritorial? It's not extraterritorial, but there does seem to be an ambiguity in terms of extending a statute there where Congress hasn't told us to. If they do it specifically when they want to, and it seems a little unfair to somebody in Mr. LaVoy-Torres' situation to say, well, the courts can sort of figure it out as they go whether a provision should apply to Puerto Rico or not. Under those circumstances, we think it's ambiguous. I don't think the fact that Congress or the courts on a sort of ad hoc basis have in one instance said, oh, Puerto Rico is like a state for this particular provision, but not like one for a jurisdictional provision, but benefits that are accorded people in the United States may not apply to Puerto Rico for certain economic things. It's just sort of done haphazardly almost. Well, how do we reason through? How are we to decide? If you were to write the opinion for us, how would you reason? I'd say it's unclear. The statute's at best ambiguous. It was ambiguous relative to foreign convictions. It's ambiguous regarding convictions in Puerto Rico. Is that what you argued in your brief, ambiguity? I think we included a reference to the rule of lenity and that the statute wasn't entirely clear. The rule of lenity is usually at the end of the road when you can't figure out the correct answer. Sometimes it's easier to get to the end than it is to stop in the middle. What about the Supreme Court in small gave us a lot of guidance as to the kinds of foreign crimes that would not be considered as appropriate in various ways, and it seems to me that Puerto Rico doesn't really fit into any of those categories. I mean, they've got a fair and just legal system. The examples that were given just don't apply. I think most people would agree that the Canadian legal system or the legal system in Great Britain is relatively fair and just, and most of the due process concerns that inform whether we should recognize something or not recognize something all apply there, and yet those convictions aren't going to be any more valid. But aren't Puerto Ricans American citizens? They are indeed U.S. citizens. I mean, it's a real difference. It's not like Canada or something like that. It is a real difference, but the fact of the matter is if Congress doesn't say whether something should apply or not apply to a particular place, how is somebody like Mr. Lavoie Torres supposed to know? Well, I think we just assume that Puerto Rico is encompassed. It surprised me to find that you didn't think so. Well, I must admit that when I first got the case I was a little surprised myself. When I read small and I said, hey, this thing doesn't seem to fit, and so it led me to take a little closer look at the facts of it, and we couldn't find a way to make it fit one way or the other. But then again, if you're looking at the rule of lenity and you're arguing that that should apply, still you look at the language, and the language says any court. So your default position over, gee, I was misled, and therefore the rule of lenity should apply, it seems to me that the any court, the very breadth of that, would seem to go against your argument that, gee, I really didn't understand it. It almost seems like small creates the ambiguity as compared to the statutory language itself. Well, there is that component to it. I mean, obviously the any court language could be construed very broadly. It could be construed to apply to foreign convictions, but it doesn't. And so now that it's been narrowed, how far should it be narrowed? The First Circuit doesn't seem to have had too many problems with this, and they found that 922G applied for gun possession in Puerto Rico, and on occasion they've applied the default rule under the Puerto Rican Federal Relations Act. Why shouldn't we do the same? I don't think they ever actually addressed this specific issue, though. Not the specific issue, I grant that. Why wouldn't at the very least the default act apply? Well, simply because the statute doesn't say. It simply doesn't say whether it should apply to Puerto Rico or not apply to Puerto Rico, and what we have now is an intervening United States Supreme Court decision that narrows the scope of the statute. We've got language from a precursor statute that was lifted out of it and placed in 922, and that language was interpreted as applying to federal, state, or local courts and not something in Puerto Rico. And some of the aspects of the Puerto Rican justice system aren't similar to ours. For instance, the fact that Mr. LaVoy-Torres went to jail down there without a lawyer, without being present, that's a little bit different than what happens here in the United States. The fact that a marijuana- But the Constitution does apply. It does apply. Puerto Rico. Not completely. I think specific provisions have been applied without reference, by the way, to whether they were Fifth Amendment or Fourteenth Amendment in terms of their application. So there are some constitutional applications that have been extended to Puerto Rico, but not all of them. Due process? First Amendment? Habeas? Due process generally. I will agree. But there's- I think you can take a look around the country. I don't think you're going to find too many places where a relatively small amount of marijuana is punished by a three-year jail sentence. Most places have- many places have decriminalized it, and even in the federal system you get a little- if you've got a small amount of marijuana, they'll put you in a civil fine circumstance or, at worst, a misdemeanor. So there are aspects of this. But doesn't Small- isn't the whole thrust of Small that we really don't look at how things are punished in certain places? We're just not going to go there. In fact, our case that went up on Small- it was our case and I was on the panel- we analyzed the system and the other country, and we went to great pains, and Small basically says, you don't do that anymore. We're going to say domestic. And so isn't the job to decide whether Puerto Rico is domestic? And haven't you argued in your brief that it is sovereign? And I haven't heard you talk today about the aspects that you think make it sovereign versus autonomous. I do think it's sovereign. It has its own self-governing system. It's got its own judicial system. They come up with their own local laws. They're not coming from Congress. They don't have a lot of say, by the way, in the statutes that are being applied in this particular case. They don't get to vote for president. They don't have anybody in Congress sitting there legislating whether something should be extended to Puerto Rico or not. So it seems like there's a lot of reasons why, in the context of Puerto Rico, who does have its own Olympic team. It does have United Nations recognition. It does have a lot of things that most states around here don't have. We don't have any states going to the Olympics or doing any of the things with the United Nations. So there are aspects of Puerto Rican autonomy that are a lot different than states. It's got a sort of unique status, and because it's got a unique status, you'd think that Congress would take the time to address it specifically, and they do in a lot of cases, but they didn't here. And a lot of this is reflected in the very forms that are appended to the government's brief. If you take a look at those forms, when Mr. Laboy-Torres is asked to fill out, hey, where were you born? He doesn't put city, Puerto Rico, state, Puerto Rico. He puts Puerto Rico over in the foreign country thing. And he gets to the bottom of the form, he starts taking a look at that, and he starts to check the box that says, I'm not a U.S. citizen, I'm a citizen of Puerto Rico. And somebody, or maybe he does it himself, corrects him and tells him, oh, you've got to check this other box on the other side. And then the next time he goes in to get a firearm, he puts Puerto Rico on the city and state side. So even the Department of Justice forms don't actually make provision for Puerto Rico. And it's our position that given it's a relative autonomous status in a lot of local matters, and given the lack of clarity surrounding the scope of the statute, that he shouldn't be punished for something that's simply not clear. He should get the benefit of the rule of lenity. We think that the court should reverse the district court's ruling, vacate the judgment, and remand the matter. Thank you, Your Honor. Mr. Ulrich, thank you very much. Mr. Smith. Good morning. May it please the court, my name is Ted Smith. I'm an assistant United States attorney for the Middle District of Pennsylvania, stationed in Harrisburg. I represent the United States, who is the appellee in this case. My colleagues back in Harrisburg jokingly suggested I begin the oral argument by asking the court to remember the main. But remembering the main, the historians tell us, was a contrivance to get us into the war that made Puerto Rico part of the United States, when in fact Puerto Rico now is very much a part of the United States, and no contrivance is needed to make it so. It is not a state, but neither is the District of Columbia. Yet convictions in the District of Columbia are considered domestic convictions for purposes of 922G. My opponent, and by the way he is also my friend, but I'll refer to him as my opponent, points out that the Commonwealth of Puerto Rico is a separate sovereign from the United States for purposes of double jeopardy analysis. But so is the Commonwealth of Pennsylvania, a separate sovereign for purposes of double jeopardy analysis. Yet Pennsylvania convictions are considered qualifying or disqualifying convictions under 922G. My opponent cites United States versus Small for the proposition that the phrase convicted in any court as used in 922G1 refers only to domestic convictions, and of course we accept that. But Small was addressing the question of whether a Japanese prior conviction qualified. Puerto Rico is a part of the United States in a way that Japan is not, in a way that Mexico, Cuba, Costa Rica, the Dominican Republic, or for that matter Canada or Great Britain are not. After all, as much due process as there is in Canada or Great Britain, a Canadian citizen cannot go to the United States District Court for the District of Canada to challenge whether he was afforded due process by the Canadian courts, and he can't appeal the decision of the United States District Court for the District of Canada or the District of Great Britain to the United States Court of Appeals for the First Circuit or the Third Circuit or the Ninth Circuit or the Thirteenth Circuit because those are truly sovereign nations. And the difference is that it's the United States Constitution that guarantees due process for United States citizens and for court systems of the states and also the court system in Puerto Rico. Many countries, what we call the enlightened liberal democracies, offer similar due process protections, but the United States Constitution doesn't guarantee those rights, which means the citizens of those countries can't come into a United States court and insist that the rights be enforced. Puerto Ricans can, people from other countries who are convicted in a Puerto Rican court, can challenge that conviction directly to the First Circuit. They can do so collaterally after the conviction is otherwise final. Puerto Ricans are American citizens. Just try telling a Puerto Rican she's not an American. I did it once when I was young. I was working with a court interpreter as an assistant DA in Dauphin County. She was helping me prepare a Spanish-speaking crime victim to testify at trial, and I asked the interpreter where she was from, and she said, Puerto Rico. And I said, oh, I thought you were an American. And she responded very forcefully, I am. Just try telling a Puerto Rican that they're not an American. Puerto Ricans, unlike most foreigners, don't need passports to travel between Puerto Rico and the mainland. And when they do need a passport, for instance, to travel to Canada or Great Britain, it's a U.S. passport that they carry. Puerto Rico has consented to have its foreign policy conducted by the United States. And that certainly, I think, is a very, very real distinguishing factor between a truly sovereign nation and a nation that's a possession of the United States. If its foreign policy is conducted on its behalf by the United States, it's part of the United States. I think the decisions of the United States Court of Appeals for the First Circuit should carry great weight because, after all, that's the circuit that they're the experts on Puerto Rico, just as this circuit would be the experts on the Virgin Islands. So I think the fact that a Puerto Rican conviction counts as a predicate conviction for the career offender guideline under the guidelines, which has much, much more restrictive language than what we're dealing with here, should certainly count for a lot in this case. The fact that Puerto Rican judgments, civil or criminal, are entitled to full faith and credit, not just in the United States District Court for Puerto Rico, but the judgments of the Puerto Rican territorial courts are entitled to full faith and credit by the courts of the states of the United States and also the United States courts themselves. Puerto Ricans, and this is perhaps the most important thing, enjoy the same federal constitutional protections in Puerto Rican courts, not just in federal courts in Puerto Rico, that defendants in the courts of the states enjoy. And that really is one of the concerns that was articulated by the Supreme Court in small when it held that foreign convictions did not count. Certainly Japan even offers due process protections very similar to ours, but many countries' courts do not. As the court in small pointed out, there are legal codes where the testimony of one man is equal to that of two women. There are substantive criminal codes that meet out draconian punishment for minor offenses. But Puerto Rico does not fall in that class, and the point is you don't look at the individual convictions, how much time, you look at whether it's domestic or not. What about the argument made by your opponent that there is an ambiguity here? I mean, when you look at the small decision, the dissent says any court means any court. The majority says not so fast. We look at the application domestically, not extraterritorially, and therefore we read it narrowly. How about the rule of lenity and the ambiguity here? Where does that get him? Well, I don't think it gets him anywhere, Your Honor, because the form he had to sign said any court. The form he had to certify on parroted the language of the statute, and so certainly he was not goaded into thinking that a conviction in Puerto Rico by the language of the statute didn't count, and he was entitled to give a no answer to that question. To the extent, therefore, that there is an ambiguity, it is an ambiguity created by the court's decision in small. I mean, he might have thought he's got this form in the United States and it says any court. You might think, oh, well, clearly I'm in the United States and they're thinking about Pennsylvania or New Jersey. You know, first of all, I don't think so. I think when it says any court, the common assumption would be that means any court. Now, someone like me back in my days as an assistant DA in Dauphin County, I might have wondered, okay, because there are many people on the mainland who don't think of Puerto Rico as part of the United States and think of it as a foreign country, as I did working with that interpreter. But this defendant is Puerto Rican, and Puerto Ricans know that Puerto Rico is part of the United States. They know they don't have to have a passport, a foreign passport, to travel between Puerto Rico and the United States. They know that they carry an American passport when they do use a passport. So I certainly don't think this defendant was fooled by the statute. You know, I, in a footnote, I guess shared some of the dissenters' criticism of the Supreme Court's decision in Small. But when I look at Small, I realize that people may have differences in the way to apply the Constitution, which I think was the problem with the dissenters there. But the fact is Small was all about drawing lines. And where do you draw the line? And the only place you can draw it as a court in Small, for the purposes of this statute, as the court pointed out in Small, was where it did draw it. Because if you drew it anywhere else, it was going to create all kinds of anomalies under the statute. And I think that's perhaps the most important part of the court, the majority's reasoning in Small, is the anomalies that would be created by interpreting any court to mean absolutely any court from any country. And the court in Small tried to look at congressional intent, suggests that by using the words any court, they were trying to resolve the problem created by the Second Circuit's interpretation of the predecessor statute that said in a court of the United States or any state or political subdivision, okay? They said any court. But then if you look at the legislative history, the Supreme Court in Small was satisfied that Congress just had not really thought about the question of whether foreign convictions would apply. And so they decided Small the way they did. There was a sharp dissent. But Small is the law. But the law, as articulated by Small, is that domestic convictions count. And a Puerto Rican conviction is as domestic, I won't say as apple pie, but as beans and rice, as apple pie. It's domestic. As I said before, try to tell a Puerto Rican that Puerto Rico is not part of the United States or that he or she is not an American. I'm inclined to invite the court to ask any questions it might have. We're not bashful. If there are none, and I certainly know that. If there are none, I would ask permission to sit down then.  Mr. Smith, thank you very much. Mr. Ulrich? Just very briefly, I don't know that I would characterize a domestic conviction in Puerto Rico as like apple pie. I mean, it looks a lot different to me. In fact, it took quite a few of us a long time to figure the thing out because it was all in Spanish. And we got around to, like, sentencing, and we thought the guy had been convicted of a possession with intent to deliver a large amount of drugs. And only after we got a couple of interpreters to look at it did we figure out, hey, it was a small amount of marijuana. It was just a possession offense. So there are a lot of distinct differences between a Puerto Rican conviction, and it certainly doesn't look like anything this court hands down or the district court in the middle district of Pennsylvania. And secondly, there are due process components of the Constitution applied in Puerto Rico, but they're also applied to foreigners in this country. So I don't know that that notion necessarily changes the context of the issue in terms of whether something should apply to Puerto Rico or not. And I also don't believe you can paint Puerto Rico on a broad enough brush to say that everybody there thinks that they want to be part of America. A lot of it hasn't won a majority vote, but there are quite a few people down there that vote for independence at each chance. And that's all I'd have to say unless the court has any additional questions. But it's always less than 50 percent, is that right? Thank you. Good. Anything further? Good. Thank you, Mr. Ulrich. Thank you, Mr. Smith. Mr. Smith has been here many, many times, Mr. Ulrich too, so they know we are not bashful in asking questions. The case was very well briefed and very well argued. Thank you, gentlemen. We'll take the matter under advisement. Please rise. This court stands adjourned until Friday, November 21st at 9 a.m.